JOHN P. BOGGS, Bar No. 172578
E-Mail: jboggs@employerlawyers.com
WILLIAM D. WHEELOCK, Bar No. 143219
E-Mail: bwheelock@employerlawyers.com
FINE, BOGGS & PERKINS LLP
16870 West Bernardo Drive, Suite 360
San Diego, CA 92127
Telephone: (858) 451-1240
Facsimile: (858) 451-1241

Attorneys for Plaintiff
RELENTLESS PURSUIT ENTERPRISES, INC.
d/b/a LEXUS OF SAN DIEGO

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA — SAN DIEGO

| | |
|---|---|
| RELENTLESS PURSUIT ENTERPRISES, INC. d/b/a LEXUS OF SAN DIEGO,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL LABOR RELATIONS BOARD, a federal administrative agency; JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; GWYNNE A. WILCOX, in her official capacity as Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, DAVID M. PROUTY, JOHN DOE 1, AND JOHN DOE 2 in their official capacities as Board Members of the National Labor Relations Board; and JOHN DOE 3 in his official capacity as an Administrative Law Judge of the National Labor Relations Board,<br><br>Defendants. | Case No. **'24CV2499 W    BLM**<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiff Relentless Pursuit Enterprises, Inc. d/b/a Lexus of San Diego ("Lexus of San Diego") brings this action for declaratory and injunctive relief, alleging as follows:

## INTRODUCTION

1. This action stems from an unlawful attempt by the National Labor Relations Board ("NLRB") to subject Lexus of San Diego to administrative proceedings in NLRB case numbers 21-CA-287064. 21-CA-293264, 21-CA-295087, 21-CA-295275, and 21-CA-305600, whose structure violates Article II of the Constitution of the United States.

2. Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.' " Seila L. LLC v. CFPB, 591 U.S. 197, 203 (2020).

3. To discharge that responsibility, the President must have the power to remove subordinate officers who assist in carrying out the President's duties. Free Enter. Fund v. PCAOB, 561 U.S. 477, 513–14 (2010).

4. This removal power extends to administrative law judges ("ALJs") who "perform substantial executive functions." Jarkesy v. SEC, 34 F.4th 446, 463 (5th Cir. 2022), *affirmed on other grounds*, 144 S. Ct. 2117(2023).

5. Article II requires that the President "have sufficient control over the performance of [such ALJs'] functions, and, by implication, . . . be able to choose who holds the positions." Id. This constitutionally-required degree of control is lacking when the ALJs are insulated by "[t]wo layers of for-cause protection"—that is, when the ALJs are removable only for cause, by officials who themselves are removable only for cause. Id.; *see* Free Enter. Fund, 561 U.S. at 492–508. The Fifth Circuit therefore held that the removal restrictions for ALJs set forth in 5 U.S.C. §7521(a) are unconstitutional as applied to ALJs for the Securities and Exchange Commission ("SEC"). Jarkesy, 34 F.4th at 465.

6. This same reasoning applies to the ALJs of the NLRB, including the ALJ assigned to preside over the pending NLRB proceedings against Lexus of San Diego. *See* VHS Acquisition Subsidiary No. 7 v. National Labor Relations Board, ___ F.Supp.3d ___, 2024 WL 5056358, at *5 (D.D.C., Dec. 10, 2024, No. 1:24-CV-02577 (TNM)) ("NLRB ALJs are cloaked in at least two—and arguably three—levels of tenure protection.")  Like the SEC ALJs in Jarkesy, NLRB ALJs are "inferior officers" who "have substantial authority" within agency investigations and enforcement actions. Jarkesy, 34 F.4th at 464; *see also* Westrock Servs., Inc., 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). And like SEC ALJs, NLRB ALJs are covered by two layers of removal protection, which insulate them from oversight by the President. *See* 5 U.S.C. §§ 1202(d), 7521(a); 29 U.S.C. § 153(a). Like the SEC ALJs in Jarkesy, NLRB ALJs are unconstitutionally insulated from the President's oversight, and the Court should declare that the NLRB ALJs' having two layers of removal protection is unconstitutional. *See* Jarkesy, 34 F.4th at 464.

7. Neither the Ninth Circuit nor the Supreme Court has decided whether the NLRB Members' layer of removal protection is unconstitutional. But the correct answer, given the relevant Supreme Court precedent, the nature of the NLRB Members' functions, and the NLRB's unique structure and statute, is a resounding yes.

8. The existence of unconstitutional removal protections inflicts twofold harm. It limits the President's constitutional authority, of course. But it also produces an administrative bureaucracy that operates on regulated parties without the constitutionally required "degree of electoral accountability." Collins v. Yellen, 594 U.S. 220, 252 (2021).

9. Because such removal protections affect not just the President, but also ordinary Americans who must interact with the administrative state, it makes no legal difference whether the President objects to a given statutory limit on his removal

powers: "the separation of powers does not depend on the views of individual Presidents, nor on whether 'the encroached-upon branch approves the encroachment.'" Free Enter. Fund, 561 U.S. at 497 (citations omitted).

10. When a party is regulated by administrative officials who are shielded by unconstitutional removal protections, Supreme Court precedent teaches that the party is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." Id. at 513.

11. To prevent Lexus of San Diego from undergoing protracted administrative proceedings before an unconstitutionally structured agency—after which Lexus of San Diego is unlikely to have a chance to secure meaningful retrospective relief—the Court should stay or enjoin these proceedings, declare that the NLRB's structure violates the separation of powers under Article II of the Constitution, and permanently enjoin the NLRB and its General Counsel from pursuing unfair labor practice charges against Lexus of San Diego before agency officials that are unconstitutionally insulated from presidential oversight.

## JURISDICTION AND VENUE

12. This action arises under the Constitution and laws of the United States. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over Lexus of San Diego's claims that fundamental aspects of the NLRB's structure violate the Constitution. *See, e.g.*, Axon Enter., Inc. v. FTC, 598 U.S. 175, 185 (2023).

13. The Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and under the Court's inherent equitable powers.

14. Venue is proper in this district and division under 28 U.S.C. § 1391(e)(1)(B). Defendants are officers of an agency of the United States acting in their official capacity; and all or a substantial part of the events or omissions giving

rise to the claim occurred in San Diego, California, at Lexus of San Diego facilities located in this judicial district. Specifically, the administrative proceedings whose constitutionality Lexus of San Diego is challenging in this case seek to establish that Lexus of San Diego committed various unfair labor practices at its facility in San Diego, California, through the NLRB proceeding and impose regulatory burdens on the Lexus of San Diego facilities and personnel in this judicial district.

## PARTIES

15. Plaintiff, Relentless Pursuit Enterprises, Inc., is a corporation organized and existing under the laws of the State of California. Plaintiff operates an automobile dealership in San Diego, California, under the duly registered fictitious business name of Lexus of San Diego.

16. Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The National Labor Relations Act ("NLRA") empowers the NLRB to initiate administrative proceedings to prevent unfair labor practices. *See* 29 U.S.C. § 160.

17. Defendant Jennifer A. Abruzzo is General Counsel of the NLRB. She is sued in her official capacity.

18. Defendant Gwynne A. Wilcox is Chairman of the NLRB. She is sued in her official capacity.

19. Defendant Marvin E. Kaplan is a Member of the NLRB. He is sued in his official capacity.

20. Defendant David M. Prouty is a Member of the NLRB. He is sued in his official capacity.

21. Defendant John Doe 1 is a Member of the NLRB, whose identity has not yet been disclosed to Lexus of San Diego. He is sued in his official capacity.

22. Defendant John Doe 2 is a Member of the NLRB, whose identity has not yet been disclosed to Lexus of San Diego. He is sued in his official capacity.

23. Defendant John Doe 3 is an Administrative Law Judge of the NLRB assigned to preside over the NLRB proceedings against Lexus of San Diego, whose identity has not yet been disclosed to Lexus of San Diego. He is sued in his official capacity.

## FACTS

24. Plaintiff operates an automobile dealership known as Lexus of San Diego located at 4970 Kearney Mesa Road, San Diego, California. On or about June 24, 2020, the NLRB certified the International Association of Machinists and Aerospace Workers Lodge No. 1484, District Lodge 190 (the "Union") as the exclusive collective-bargaining representative for a bargaining unit of Plaintiff's employees consisting of all full-time and regular part-time technicians, foremen, and lube technicians employed by Lexus of San Diego at its facility currently located at 4970 Kearny Mesa Road, San Diego, California.

25. On April 22, 2022, members of the bargaining unit filed a petition in case number 21-RD-291417 seeking to decertify the Union as the collective-bargaining representative of the bargaining unit at Lexus of San Diego. The decertification election was held on April 29, 2022, with a majority of the bargaining unit voting in favor of the decertification petition. The Union filed objections to the decertification election which remain pending before the NLRB.

26. On November 7, 2024, the Regional Director for NLRB Region 21 issued a consolidated complaint on the alleged unfair labor practices charged in NLRB case numbers 21-CA-287064, 21-CA-293264, 21-CA-295087, 21-CA-295275, and 21-CA-305600, and notice that an administrative hearing would occur before an as-yet unidentified ALJ commencing on May 6, 2025, in San Diego, California.

27. The consolidated complaint is based on the following purported unfair labor practice charges:

  a. The charge in case number 21-CA-287064 alleged that Lexus of San Diego committed an unfair labor practice in violation of the NLRA by refusing to bargain with the Union by unilaterally setting employment terms for new bargaining unit employees without affording the Union advance notice and a meaningful opportunity to bargain. Lexus of San Diego submitted its position and supporting evidence refuting the allegations of the charge.

  b. The charge in case number 21-CA-293264 alleged that Lexus of San Diego committed an unfair labor practice in violation of the NLRA by maintaining unlawful handbook rules that restrain and coerce employees in the exercise of Section 7 rights, including rules which require employees to report government investigations to the Employer. Lexus of San Diego submitted its position and supporting evidence refuting the allegations of the charge.

  c. The charge in case number 21-CA-295087 alleged that Lexus of San Diego committed an unfair labor practice in violation of the NLRA by making promises during a decertification campaign what workers would get better pay if they voted against the Union. Lexus of San Diego submitted its position and supporting evidence refuting the allegations of the charge.

  d. The charge in case number 21-CA-295275 alleged that Lexus of San Diego committed an unfair labor practice in violation of the NLRA by unlawfully withdrawing recognition of the Union. Lexus of San Diego submitted its position and supporting evidence refuting the allegations of the charge.

  e. The charge in case number 21-CA-305600 alleged that Lexus of San Diego committed an unfair labor practice in violation of the NLRA by refusing to provide, or unreasonably delaying in providing, information requested by the Union regarding certain repair orders. Lexus of San Diego submitted its position and supporting evidence refuting the allegations of the charge.

## COUNT I – THE NLRB'S ALJS ARE ARE INSULATED FROM REMOVAL IN VIOLATION OF ARTICLE II OF THE CONSTITUTION

28. Lexus of San Diego restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

29. NLRB ALJs are "Officers of the United States" under the Constitution's Appointments Clause—not mere employees—because among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare proposed findings and opinions. *See* Lucia v. SEC, 1585 U.S. 237, 247-253 (2018); Jarkesy, 34 F.4th at 464; Westrock Servs., 366 N.L.R.B. No. 157, slip op. at 1.

30. At the same time, the NLRB may attempt to remove its ALJs "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). In turn, by statute, Members of the MSPB are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). And under the NLRA, Board Members are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

31. Given NLRB ALJs' status as "officers" of an executive agency, "they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." Jarkesy, 34 F.4th at 464.

32. The statutes' provision of at least two layers of removal protection prevents that exercise of presidential authority and thus violates Article II of the Constitution. *See* Free Enter. Fund, 561 U.S. at 492–508; Jarkesy, 34 F.4th at 463–65.

33. But for these unlawful removal restrictions, either the ALJ assigned to Lexus of San Diego's administrative case or the NLRB Members who bear responsibility to supervise and exercise control over the ALJ would face the prospect of removal by the President based on their conduct during the proceedings.

34. Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well settled precedent. Axon Enter., 598 U.S. at 191 (citation omitted); *see also, e.g.*, Cochran v. SEC, 20 F.4th 194, 210 n.16, 212–13 (5th Cir. 2021) (en banc), *aff'd and remanded sub nom.* Axon Enter., 598 U.S. 175.

35. Accordingly, Lexus of San Diego is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Lexus of San Diego is] subject will be enforced only by a constitutional agency accountable to the Executive." Free Enter. Fund, 561 U.S. at 513.

36. Moreover, without interim injunctive relief from this Court, Lexus of San Diego will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

37. Lexus of San Diego bears a strong likelihood of success on this claim for the reasons detailed above.

38. Yet, unless the NLRB is enjoined from proceeding against Lexus of San Diego before an ALJ unconstitutionally insulated from presidential oversight, Lexus of San Diego will be irreparably harmed.

39. Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against Lexus of San Diego, the constitutional injury will likely be irremediable. The Supreme Court has stated that those subject to an unconstitutional proceeding by improperly insulated administrative agency officials often have no retrospective redress after the fact. *See* Collins, 594 U.S. at 257-260.

40. The harm to Lexus of San Diego, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted.

41. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

## COUNT II – THE NLRB'S MEMBERS ARE INSULATED FROM REMOVAL IN VIOLATION OF ARTICLE II OF THE CONSTITUTION

42. Lexus of San Diego restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

43. The NLRB's Members may be removed by the President only "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

44. Yet the NLRB's Members exercise substantial executive power under the Constitution in administering and enforcing the provisions of the NLRA.

45. For example, Section 10(j) of the NLRA, 29 U.S.C. § 160(j), gives the Board authority to exercise quintessentially prosecutorial power in federal district courts: "The Board shall have the power, upon issuance of [an administrative] complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j); *see, e.g* Muffley ex rel. N.L.R.B. v. Spartan Mining Co., 570 F.3d 534, 540 (4th Cir. 2009) (ability to seek § 10(j) relief is "clearly prosecutorial" in nature.).

46. More generally, the NLRB also enforces and implements the NLRA in many ways, including by determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of its unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160.

47. In these and other ways, the NLRB wields substantial prosecutorial, rulemaking, policymaking, and adjudicative authority.

48. The Supreme Court has made clear, moreover, that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they

are exercises of—indeed, under our constitutional structure they *must be* exercises of—the "executive Power.'" Seila L., 591 U.S at 216 n.2 (citation omitted).

49. Also, the removal protections for NLRB Members are unusually strict. In contrast to more common provisions that permit removal "for inefficiency, neglect of duty, or malfeasance in office," Humphrey's Executor v. United States, 295 U.S. 602, 620 (1935) (quoting 15 U.S.C. § 41), the NLRA permits removal only "for neglect of duty or malfeasance in office," and explicitly prohibits removal for any other cause, like inefficiency, 29 U.S.C. § 153(a).

50. Moreover, unlike other federal agencies, the NLRB has a distinctive structure that divides agency authority between its Members and its General Counsel, who is a politically accountable official responsible for deciding which cases to bring before the NLRB Members. *See* 29 U.S.C. § 153(d); Exela Enter. Sols., Inc. v. NLRB, 32 F.4th 436, 441 (5th Cir. 2022); NLRB v. United Food & Com. Workers Union, Loc. 23, 484 U.S. 112, 128–29 (1987).

51. The combination of the NLRB's unique structure, the NLRB Members' especially strict removal protections, and their exercise of substantial executive power violates Article II of the Constitution.

52. But for these unlawful removal restrictions, the NLRB Members would face the prospect of removal by the President—including based on their conduct during the proceedings against Lexus of San Diego.

53. Being subject to proceedings before unconstitutionally insulated agency officials is a "here-and-now injury" justifying pre-enforcement judicial intervention. Axon Enter., 598 U.S. at 191 (citation omitted); Cochran, 20 F.4th at 210 n.16, 212–13.

54. So, here too, Lexus of San Diego is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Lexus of San Diego is] subject will be enforced only by a constitutional agency accountable to the Executive." Free Enter. Fund, 561 U.S. at 513.

55. Moreover, without interim injunctive relief from this Court, Lexus of San Diego will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

56. Lexus of San Diego bears a strong likelihood of success on this claim for the reasons detailed above.

57. Yet, unless the NLRB is enjoined from proceeding against Lexus of San Diego before an NLRB whose Members are unconstitutionally insulated from presidential oversight, Lexus of San Diego will be irreparably harmed.

58. Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against Lexus of San Diego, the harm will likely be irremediable because of the difficulty of obtaining retrospective redress for an unconstitutional proceeding by improperly insulated administrative agency officials. *See* Collins, 594 U.S. at 257-260.

59. The harm to Lexus of San Diego, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted.

60. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

**COUNT III – THE NLRB'S ALJS ADJUDICATE PRIVATE RIGHTS WITHOUT A JURY TRIAL IN VIOLATION OF THE ELEVENTH AMENDMENT TO THE CONSTITUTION**

61. Lexus of San Diego restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

62. The Seventh Amendment protects the right to trial by jury. It provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.

63. The Supreme Court interprets "'Suits at common law' to include all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." Jarkesy, 34 F.4th at 452 (citing Tull v. United States, 481 U.S. 412, 417 (1987)). The Supreme Court noted that the Seventh Amendment "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." SEC v. Jarkesy, No. 22-859, 603 U.S. ___, slip op. at 8 (2024) (quoting Parsons v. Bedford, 3 Pet. 433, 447 (1830)).

64. "The term can include suits brought under a statute as long as the suit seeks common-law-like legal remedies." Id. (emphasis added).

65. In other words, Lexus of San Diego is entitled to a jury trial if its adversary seeks *legal* relief against it. As the United States Supreme Court held in SEC v. Jarkesy, 144 S. Ct. 2117, 2127 (2024), "it is well established that common law claims must be heard by a jury." Moreover, "[o]nce such a suit 'is brought within the bounds of federal jurisdiction,' an Article III court must decide it with a jury if the Seventh Amendment applies." SEC v. Jarkesy, 144 S. Ct. at 2131 (quoting Stern v. Marshall, 564 U.S. 462, 484 (2011)).

66. "Compensatory damages," or "monetary relief for all losses…sustained as a result of the alleged breach of…duties" are "the classic form of legal relief." Mertens v. Hewitt Assocs., 508 U.S. 248, 255 (1993) (emphasis omitted).

67. The NLRA authorized the Board to remedy unfair labor practices through an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. §160(c).

68. The statute authorizes *equitable* relief. The statute does not authorize *legal* relief— such as compensatory damages.

69. Despite this clear language, the Board has authorized its Regions to seek consequential or "compensatory" damages. *See* Thryv, Inc., 372 NLRB No. 22 (Dec.

13, 2022) (enf. denied in part and vacated in part, Thryv Inc., v. NLRB, Case No. 23-60132 (5th Cir. May 24, 2024)). In Airgas USA, LLC, 373 NLRB No. 102, fn. 2 (2024), the Board reiterated that Regions may continue to seek consequential or compensatory damages under the Board's rationale Thryv, In.

70. According to the Board, these damages may include "interest and late fees on credit cards;" "credit card debt;" "early withdrawals from [a] retirement account;" compensation for the loss of a "car or [] home," if the discriminatee is unable to make loan or mortgage payments; "increased transportation or childcare costs;" or "out-of-pocket medical expenses." Id. at 15.

71. In an attempt to distance itself from the word "consequential" and avoid finding itself in violation of the Seventh Amendment, the Board explained: [W]e stress today that the Board is not instituting a policy or practice of awarding consequential damages, a legal term of art more suited for the common law of torts and contracts. Instead, we ground our decision in the make-whole principles of Section 10(c) of the Act…and our affirmative duty to rectify the harms caused by a respondent's unfair labor practice by attempting to restore the employee to the situation they would have been in but for that unlawful conduct. Id. at 14.

72. Read differently, the Board authorized legal relief by calling it equitable relief so as to manipulate its authority.

73. The Fifth Circuit saw through the veil, referring to remedies requiring "losses incurred as a direct or foreseeable result of" the alleged unlawful action as "novel, *consequential* damages- like labor law remed[ies]." See Thryv Inc., v. NLRB, Case No. 23-60132 at *9 (5th Cir. May 24, 2024) (emphasis added).

74. However, in its decision, the Fifth Circuit did not discuss whether or not the NLRB could continue to seek these novel consequential damages.

75. In its Complaint in the underlying administrative matter, the Region is seeking consequential damages of an unspecified amount against Lexus of San Diego.

76. The Region continues to pursue consequential damages against employers, including Lexus of San Diego.

77. The fact that the underlying administrative complaint also seeks equitable relief does not strip Lexus of San Diego of its jury-trial right. *See* Jarkesy, 34 F.4th at 454 ("The Seventh Amendment applies to proceedings that involve a mix of legal and equitable claims.").

78. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. Axon Enter., Inc., 598 U.S. at 191.

79. Lexus of San Diego is entitled to declaratory relief to ensure that it may have the opportunity to present its case against consequential damages to a jury of its peers.

80. Without interim injunctive relief, Lexus of San Diego may be ordered to pay damages to Charging Party without the appropriate safeguards a jury provides.

81. Lexus of San Diego bears a strong likelihood of success on the merits for the reasons articulated above.

82. If the NLRB is not enjoined from proceeding against Lexus of San Diego in the related unfair labor practice hearing, Lexus of San Diego will be irreparably harmed because it may be forced to pay damages that are not permitted to be determined in a non-Article III court setting.

83. The balance of equities tips in Lexus of San Diego's favor because it stands to suffer both economic and constitutional harms while Defendants stand to lose nothing.

84. It is in the public interest to remedy the NLRB's unconstitutional method of recovering damages from employers.

## COUNT IV – THE NLRB'S WIELDING OF EXECUTIVE, LEGISLATIVE, AND JUDICIAL AUTHORITY AND POWER VIOLATES THE FIFTH AMENDMENT TO THE CONSTITUTION

85. Lexus of San Diego restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

86. The NLRB is an executive agency. 29 U.S.C § 153(a). It is not a part of the judiciary or legislature.

87. Under the Constitution, the judicial power belongs to Article III courts and cannot be shared with legislature or executive. *See* Stern v. Marshall, 564 U.S. 462, 482 (2011).

88. Under "the basic concept of the separation of powers…that flows from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States…can no more be shared with another branch than the Chief Executive…can share with the Judiciary the veto power." Id. at 483 (citing United States v. Nixon, 418 U.S. 683, 704 (1974)) (internal citations omitted).

89. However, as explained in Count III, *infra*, the Board recently took an adjudicatory role when it expanded its authority to award damages under the NLRA and made itself the body determining the amount of that award. *See* Thryv, Inc., 372 NLRB No. 22 at 9.

90. The ability to determine the appropriate amount of legal relief belongs to a jury, the function of the judiciary, not the executive.

91. By determining the amount of direct and foreseeable pecuniary and consequential damages in administrative proceedings against Lexus of San Diego, Defendants, as executives, act as the judiciary.

92. In the same vein, the NLRB acted in a quasi-legislative role when it articulated a new interpretation of Section 10(c) of the Act which expressly authorizes the Board to issue an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without back pay," and no other remedies. 29 U.S.C. § 160(c).

93. By promulgating this new remedy, the Board essentially created its own rule and its own method of determining that remedy exercising all three powers at once.

94. "An unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." Williams v. Pennsylvania, 579 U.S. 1, 8 (2016).

95. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. Axon Enter., Inc., 598 U.S. at 191.

96. Lexus of San Diego is entitled to declaratory relief to ensure that its due process rights are not violated.

97. Without interim injunctive relief, Lexus of San Diego will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

98. Lexus of San Diego bears a strong likelihood of success on the merits for the reasons articulated above.

99. If the NLRB is not enjoined from proceeding against Lexus of San Diego in the related unfair labor practice hearing, Lexus of San Diego will be irreparably harmed because it will have endured a proceeding led by individuals who serve as executives, legislators, and judges in violation of the separation of powers.

100. The balance of equities tips in Lexus of San Diego's favor because, should the NLRB proceeding go forward, Lexus of San Diego will lose its right to undergo a constitutional proceeding, an injury "impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." Axon Enter., Inc., 598 U.S. at 179, 192.

101. It is in the public interest to remedy the unconstitutional procedures here in order to protect Americans' constitutional rights.

# PRAYER FOR RELIEF

**WHEREFORE**, Lexus of San Diego hereby requests that the Court order the following relief and enter a judgment:

1. Declaring that:

    a. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a), are unconstitutional;

    b. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional; and

    c. The NLRB proceedings against Lexus of San Diego deprive Lexus of San Diego of its constitutional right to a trial by jury.

2. Preliminarily enjoining Defendants from subjecting Lexus of San Diego to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3. Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

4. Awarding Lexus of San Diego its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

5. Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated: December 31, 2024            FINE BOGGS & PERKINS LLP

 

_____
John P. Boggs, Esq.
Attorneys for Plaintiff
Relentless Pursuit Enterprises, Inc. d/b/a Lexus of San Diego